**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| THERESA M. SLIVKA, ) | CASE NO. 1:17-cv-01076 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| ) | |
| NANCY A. BERRYHILL, ) | |
| *Acting Comm'r of Soc. Sec.*, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff, Theresa M. Slivka (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. Procedural History

On May 6, 2014, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of January 7, 2013. (Transcript ("Tr.") 222-228). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 159-191). Plaintiff participated in the hearing on March 1, 2016, was represented by counsel, and testified. (Tr. 35-89). A vocational expert ("VE") also participated and testified. *Id*. On March 18, 2016, the ALJ found Plaintiff not disabled. (Tr. 30). On April 5, 2017, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On May 23, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10, 11, 12).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to account for all the limitations assessed by a State Agency psychologist despite ostensibly ascribing her opinion great weight, and (2) the ALJ failed to include symptoms related to vertigo into the RFC. (R. 10).

## II. Evidence

**A. Relevant Medical Evidence**[1]

### 1. Treatment Records

On August 12, 2013, Plaintiff was seen by a nurse practitioner for cervical and breast cancer screenings. (Tr. 299). Her past medical history was noted as including eye problems, tremors, and manic bipolar disorder. *Id*. Plaintiff denied any other past diagnoses. *Id*.

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

On February 28, 2014, Plaintiff saw Sheila Reddy, M.D., to establish primary care. (Tr. 301-303). Dr. Reddy noted Plaintiff had a medical history of bipolar depression, was currently taking Depakote, and "has remained stable on current regimen." (Tr. 303). Physical examination was normal, except for a skin lesion. (Tr. 303).

On March 25, 2014, Plaintiff visited the emergency room ("ER") for complaints of chest pain and dizziness. (Tr. 315, 431). A cardiac etiology was not suspected, chest x-rays and neurological examination were normal. (Tr. 307, 315). Plaintiff "was worked up without any positive findings." (Tr. 311). Plaintiff was noted to be slightly manic, but had reasonable insight and thought process. (Tr. 315). She was given Meclizine for dizziness, which yielded improvement. (Tr. 315).

On March 28, 2014, Plaintiff reported her vertigo was better with medication, though she still reported "the room is spinning somewhat." (Tr. 311). The physical-examination findings were normal, and Plaintiff was referred to an ear, nose, and throat (ENT) specialist (Tr. 312-313).

On April 12, 2014, Plaintiff was seen by John Lazo, M.D. (Tr. 284-295). Plaintiff's chief complaint was dizziness, nausea, and left ear pain, which started when Plaintiff's mother passed away two months earlier. (Tr. 284). Her family had requested a mental health evaluation. *Id*. The physical examination was largely normal, except Plaintiff "subjectively states that she gets more dizzy" upon sitting or upright on the examination cart. (Tr. 284-285). A CAT scan of the brain revealed mild ventriculomegaly, which was unusual for her age but no other significant findings. (Tr. 285, 293-294). The impression was vertigo and anxiety (Tr. 285). "Work Excuse / restrictions [were] not given" at discharge. (Tr. 290).

3

On April 14, 2014, Plaintiff saw ENT specialist Marie Bergomi, CNP, for vertigo (Tr. 315-318). Plaintiff reported 10 episodes daily, lasting 5 minutes per episode, when walking, standing, or rolling over in bed. *Id*. The Dix-Hallpike testing for vertigo diagnosis was negative for vertigo and rotary nystagmus when Plaintiff was placed in a recumbent position; mild vertigo was noted when she returned to the sitting position, without nystagmus. (Tr. 318). Auditory testing revealed "Normal hearing sensitivity, bilaterally. Immittance testing was consistent with normal middle ear function, bilaterally and normal VIII nerve function at least at the right ear (left VIII could not be assessed). Hearing is adequate for communicational needs." (Tr. 320). Ms. Bergomi noted that Plaintiff's vertigo symptoms had a positional component, but was clearly not BPPV (Benign Paroxyysmal Positional Vertigo). (Tr. 318).

On July 7, 2014, Plaintiff underwent a psychiatric evaluation at The Centers for Families and Children ("CFC"). (Tr. 360-364). She had a bachelor's degree and, in addition, had completed over 200 credit hours with a 2.9 GPA (Tr. 360, 363). She had no anxiety or psychosis. (Tr. 360). The neurological examination was normal (Tr. 361). She was partially medication compliant (Tr. 364). The evaluator's recommendations included increasing Depakote, counseling, and case management. (Tr. 361). She was assessed with bipolar disorder, most recently manic, without psychotic features; personality disorder/mental retardation; psychosocial and environmental problems; and ascribed a Global Assessment of Functioning ("GAF") score of 60.[2] (Tr. 361-362).

---

[2] The GAF scale reports a clinician's assessment of an individual's overall level of functioning at a particular moment. An individual's GAF is rated between 0-100, with lower numbers indicative of more severe mental impairments. An individual with a score of 51-60 is classified as having "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning." *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) (DSM-IV). Notably, an update of the DSM in 2013 eliminated the

On July 15, 2014, Plaintiff returned to Dr. Reddy, her primary-care physician (Tr. 397-400). She noted that Plaintiff's recent vertigo was "known to EBT" and "controlled with [A]ntivert." (Tr. 398).

On July 21, 2014, Plaintiff was again seen by nurse practitioner Bergomi for a follow-up ENT examination. (Tr. 392). Since her previous visit, she had "completed VNG testing, with normal peripheral vestibular function." *Id*. "Patient reports 'vertigo' had resolved, but came back when she was hit in the nose at about two weeks …." *Id*. She reported symptoms of lightheadedness, room spinning, and difficulty concentrating. *Id*. The Dix-Hallpike test was "[n]egative for vertigo or rotary nystagmus when placed in a recumbent position. Patient noted mild dizziness when returning to sitting position, without nystagmus." (Tr. 395). She was diagnosed with dizziness and notes indicated that her symptom pattern was "suggestive of anxiety component and/or orthostatic hypotension." (Tr. 395).

On September 26, 2014, Plaintiff denied anxiety, chest pain, dizziness, nausea, vision problems, and vomiting. (Tr. 390).

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On July 10, 2014, Amber Hill, Ph.D., performed a psychological and intelligence consultative evaluation that was based on information provided by Plaintiff in disability forms and questionnaires, a clinical interview with Plaintiff, and psychological testing. (Tr. 366). Plaintiff spent her days taking college courses, reading, going to aerobic classes with friends, and doing housework. (Tr. 367). Plaintiff stated that she had taken Depakote in the past, for bipolar

---

GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

5

disorder, but had only been taking the medication currently for the past two weeks. (Tr. 368). She was dressed appropriately and well-groomed; her speech was fluent but, at times, required some redirection; she had no hallucinations, delusions, or paranoia; her affect was of full range and her mood euthymic; she had no observed anxiety; her sensorium was clear and she was oriented x 3; her concentration and attention, recent and remote memory, and insight and judgment all appeared intact; her intellectual functioning was in the below average range. (Tr. 371-372). Wechsler Adult Intelligence Scale (WAIS-IV) psychological testing revealed a full-scale composite IQ score of 83. (Tr. 373). Her performance on the Wide Range Achievement Test (WRAT-IV) were determined to *not* reflect "deficits or impairment in overall academic skills related to her academic achievement. Although the claimant's lowest earned scores were related to math computation, it is not reflective of significant deficits suggestive of a specific learning disorder." (Tr. 374-375). Dr. Hill diagnosed "[o]ther specified bipolar and related disorder with minimal hypomanic symptoms without prior major depressive episode; adjustment disorder with depressed mood; and alcohol use disorder, mild, in sustained remission." (Tr. 375). Dr. Hill found that Plaintiff could: (1) understand, remember, and carry out instructions; maintain attention, concentration, persistence, and pace for simple and multi-step tasks; respond appropriately to supervisors and co-workers; and, respond appropriately to work pressures within a work setting. (Tr. 377-378).

On December 7, 2014, State-agency medical consultant Leanne M. Bertani, M.D., reviewed the record and opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for six hours and sit for six hours; occasionally climb ramps/stairs, crawl, and balance, never climb ladders/ropes/scaffolds; and needed to avoid even moderate exposure to hazards (machinery, heights, etc.). (Tr. 134-35).

On December 16, 2014, State-agency psychological consultant, Cindy Matyi, Ph.D., reviewed the record and found that Plaintiff was moderately limited in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace (Tr. 132). She found that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, explaining that Plaintiff's "[c]ondition restricts capacity for detailed/complex tasks, but she is able to comprehend, remember, and carry out simple (1-2 step) and occasional complex (3-4 step) instructions." *Id*. With respect to sustained concentration and persistence limitations, Dr. Matyi opined that Plaintiff was "[m]oody and suspicious. Concentration and pace variable. Nonetheless, she can maintain some flexibility in terms of time limits and production standards." (Tr. 136-137). In the area of social interaction, Dr. Matyi stated that "[c]laimant can relate superficially with others; would do best in setting that did not require collaborative efforts for task completion. (Tr. 137). Finally, in the area of adaptation limitations, Dr. Matyi opined that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. *Id*. Dr. Matyi asserted that Plaintiff "*may* require occasional rest breaks or opportunities for task reminders to restore focus and manage symptoms." *Id*. (emphasis added).

## B. Relevant Hearing Testimony

At the March 1, 2016 hearing, Plaintiff testified as follows:

- She lives with her father, who is retired. She is 5'5" tall and weighs 195 pounds. She is right-handed and never had a driver's license. (Tr. 40). She takes the bus for transportation two to three times per week. (Tr. 41).

- She completed the 10th grade and later obtained a GED. She also has an associate's degree in business and a bachelor's degree in communications. (Tr. 40-41).

- She has not worked since her alleged onset date. (Tr. 42).

- Testing in May of 2014 revealed that she does not have vertigo. (Tr. 51-52). Nevertheless, she experiences dizziness when trying to walk straight, but has received no treatment. *Id*. Her dizziness affects her ability to walk, and she experiences dizzy spells three to four times per day. (Tr. 53). She lays down two to three times per day to relieve her dizziness for approximately 10 to 15 minutes at a time. Her dizziness also affects her ability to focus. (Tr. 54).

- She has been diagnosed with keratoconus and has been prescribed glasses. (Tr. 55). However, she is unable to read words on paper or on a computer unless it is in a very large font. *Id*. By July of 2014, after the alleged onset date, she had completed 200 credit hours and had a 2.9 GPA. (Tr. 56).

- She had seen a chiropractor on three occasions due to left shoulder pain stemming from a work-related injury in 2012. (Tr. 59). She did not undergo any x-rays or MRIs. *Id*. She attended physical therapy for her left shoulder between May and July of 2015. (Tr. 60). The physical therapy helped, but she was still currently taking pain medication. (Tr. 61).

- She has not been diagnosed with any left-leg issues since her alleged onset date. (Tr. 60).

- She has seen a psychiatrist and attends counseling for bipolar disorder and anxiety. (Tr. 62). She decreased the frequency of her counseling while she was in school. *Id*. She has been prescribed Depakote for her bipolar disorder, but takes no medication for anxiety. (Tr. 64). She has not undergone any inpatient hospitalizations or ER visits for psychological symptoms since her alleged onset date. (Tr. 64).

- It was primarily her vision and bipolar disorder that prevents her from working. (Tr. 70).

The VE described the jobs designated as past relevant work by the ALJ as follows: playroom attendant, Dictionary of Occupational Titles ("DOT") 359.677-026, SVP 3, light exertional, and attendant, automobile self-serve service station, DOT 915.477-010, SVP 3, light exertional. (Tr. 78-79).

The ALJ posed the following hypothetical question to the VE:

> I'd like you to assume a hypothetical individual of the Claimant's age and education and with the past jobs you described. Further assume the individual is limited to medium work. They can occasionally balance and climb ramps and stairs. They can never climb ladders, ropes or scaffolds. The individual's vision is limited such that they can read text that is no smaller than large book print.

\*\*\*

> Also they have limited depth perception such that they are unable to make accurate judgments of distance and speed. They can never work in an environment of unprotected heights, moving mechanical parts or that requires driving a vehicle. The individual is capable of tasks consistent with unskilled work but never work in an environment with a production rate pace such as on an assembly line. They can work in an environment with only occasional changes to assigned tasks or work flow and of the sort that can be learned after a short demonstration. Finally, they can have frequent superficial interaction with co-workers, supervisors and the public.

(Tr. 79-80).

The VE testified that such an individual could not perform her past relevant work. (Tr. 80-81). However, the VE testified that there were other jobs such an individual could perform, and identified the following: industrial cleaner, DOT 381.687-018, SVP 2 (1,250,000 jobs nationally); laundry worker II, DOT 361.685-018, SVP 2 (160,000 jobs nationally); and, dining room attendant, DOT 311.677-018, SVP 2 (400,000 jobs nationally). *Id*.

The ALJ posed a second hypothetical keeping the same restrictions as before except for lowering the exertional level to light work. (Tr. 81). "Moreover they can occasionally push and pull with the left upper extremity as with the use of the hand controls. Also they can only occasionally reach overhead with the left upper extremity." *Id*. The VE identified the following jobs that such an individual could perform: cafeteria attendant, DOT 311.677-010, SVP 2 (100,000 jobs nationally); cleaner/housekeeping, DOT 323.687-014, SVP 2 (150,000 jobs nationally); and, counter attendant, DOT 311.477-014, SVP 2 (200,000 jobs nationally). The VE further testified that requiring reminders or redirection three times daily, the need to lie down three times a day for fifteen minutes, or more than one absence per month would all be work preclusive. (Tr. 82).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the

national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. Ms. Slivka meets the insured status requirements of the Social Security Act through December 31, 2014.

2. Ms. Slivka has not engaged in substantial gainful activity since January 7, 2013, the alleged onset date (20 CPR 404.1571 *et seq*., and 416.971 *et seq*.).

3. Ms. Slivka has the following severe impairments: keratoconus, vertigo, bipolar disorder, and anxiety disorder (20 CPR 404.1520(c) and 416.920(c)).

4. Ms. Slivka does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that Ms. Slivka has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can occasionally balance and climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She can read text that is no smaller than large book print. She is unable to make accurate judgments of distance and speed. She can never work in an environment with unprotected heights, moving mechanical parts or do work that requires driving a vehicle. She can do unskilled work. She can never work in an environment with a production rate pace such as on an assembly line. She can work in an environment with only occasional changes to assigned tasks or workflow, and of the sort that can be learned after a short demonstration. Finally, she can have frequent, superficial interaction with coworkers, supervisors and the public.

6. Ms. Slivka is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. Ms. Slivka was born on ***, 1966 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

    8.    Ms. Slivka has a limited education and is able to communicate in English (20 C.F.R. § 404.1564 and 416.964).

    9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Ms. Slivka is "not disabled," whether or not Ms. Slivka has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    10.    Considering Ms. Slivka's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Ms. Slivka can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    11.    Ms. Slivka has not been under a disability, as defined in the Social Security Act, from January 7, 2013, through the date of this decision (20 CPR 404.1520(g) and 416.920(g)).

(Tr. 21-30).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

12

Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. Weight Ascribed to State Agency Psychologist Dr. Matyi

In the first assignment of error, Plaintiff argues the ALJ erred by failing to account for *all* of the limitations opined by Dr. Matyi to whose assessment he assigned great weight or, "at the very least, [to] explain the exclusion of the limitations that are likely outcome determinative." (R. 10, PageID# 556-561). By failing to include these alleged limitations, Plaintiff argues, the RFC was inaccurate. *Id*. Conversely, the Commissioner asserts the RFC was supported by substantial evidence and that the ALJ properly evaluated Dr. Matyi's opinion. (R. 11, PageID# 574-582).

A claimant's RFC is an indication of an individual's work related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a).[3] Therefore, it is the ALJ who bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform

---

[3] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, *the claimant's RFC*, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

First, Plaintiff argues that the ALJ failed to address pace, production, and stress related limitations assessed by Dr. Matyi. The court finds this argument unpersuasive. The RFC includes numerous limitations related to these findings. First, the decision includes the following limitation in the RFC: Plaintiff "can *never* work in an environment with a production rate pace such as on an assembly line." (Tr. 24) (emphasis added). Plaintiff fails to offer any meaningful argument or explanation as to how the complete elimination of work involving production rate pace fails to account for these limitations. Second, with respect to poor stress management skills, the RFC limited Plaintiff to "work in an environment with only occasional changes to assigned tasks or workflow, and of the sort that can be learned after a short demonstration" as well as only frequent, superficial interaction with coworkers, supervisors and the public. (Tr. 24). Again, Plaintiff's brief contains no meaningful or persuasive explanation as to how these limitations fail to adequately account for Plaintiff's poor stress management. Simply because the ALJ did not express the limitations in the RFC by using identical language or phrases to those employed in Dr. Matyi's opinion, it does not follow that the ALJ failed to incorporate the substance of those opinions.

Finally, Plaintiff contends that the ALJ did not include the alleged limitation from Dr. Matyi's opinion that Plaintiff *will* require occasional rest breaks or opportunities for task reminders to restore focus and mane symptoms. (R. 10, PageID# 554) (emphasis added).

Plaintiff's characterization of Dr. Matyi's opinion, however, is not entirely accurate. Dr. Matyi herself uses much more equivocal and ambiguous language. Dr. Matyi merely states that Plaintiff "*may* require occasional rest breaks or opportunities for task reminders …." (Tr. 137) (emphasis added). Furthermore, Plaintiff's assertion that "the ALJ *acknowledged* that Dr. Matyi assigned the requirement for occasional rest breaks or opportunity for task reminders" is again inaccurate. (R. 10, PageID# 558) (emphasis in original). Instead, the ALJ's decision, when paraphrasing this specific statement of Dr. Matyi, carefully retains the qualified and uncertain language employed by Dr. Matyi by stating that Plaintiff "*might* require occasional rest breaks" or "task reminders." (Tr. 28) (emphasis added). Moreover, Plaintiff cites no authority suggesting that an ALJ errs by failing to incorporate a medical source's ambiguous statement that simply avers certain limitations may (or may not) be necessary. While the ALJ did not expressly state that he was rejecting this so-called opinion concerning breaks and reminders, the court finds nothing unreasonable or insufficient with respect to the ALJ's decision. *See, e.g., Honaker v. Colvin*, No. 1:14-CV-2487, 2015 WL 5559888 at *8 (N.D. Ohio Sept. 21, 2015) (White, M.J.) (finding no error where the ALJ did not adopt an equivocal and "non-committal" medical opinion that certain symptoms "*could* result in attendance or decision-making issues.")

Simply put, the court finds no reversible error stemming from an ALJ's omission of such an equivocal statement. To treat the *possible* limitations floated by Dr. Matyi as an affirmative finding that such limitations are mandated would improperly alter the contents of the medical source's opinion. While it would have been preferable for the ALJ to address specifically why such breaks were not incorporated into the RFC, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th

15

Cir.1989); *accord Kobetic v. Comm'r of Soc. Sec.*, 114 Fed. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'") (*quoting NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)); *Mabrey v. Comm'r of Soc. Sec.*, 1:13-cv-555, 2015 WL 556435 at *5 (S.D. Ohio Feb. 10, 2015), *adopted by* 2015 WL 1412205 (Mar. 26, 2015).

Therefore, Plaintiff's first assignment of error is without merit.[4]

### 2. Vertigo

In the second assignment of error, Plaintiff argues that while the ALJ designated vertigo as a "severe" impairment at Step Two, the ALJ "failed to account for the practical effects of this impairment in the RFC finding." (R. 10, PageID# 561). Plaintiff asserts that a severe impairment "must, as a matter of law, be translated into at least some work-related limitations .…" *Id*.

"At step two, the Commissioner must determine whether the claimant has a severe impairment." *Nejat v. Comm'r of Soc. Sec*., 359 Fed. App'x 574, 576–77 (6th Cir. 2009) (observing that "[t]his circuit construes the step two severity regulation as a '*de minimis* hurdle,' intended to 'screen out totally groundless claims.'") (citations omitted). The Court explained that "if an impairment has 'more than a minimal effect' on the claimant's ability to do basic work

---

[4] It further bears noting that "there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight." *Smith v. Comm'r of Soc. Sec.*, No. 5:11 CV 2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013) (Knepp, M.J.), *aff'd* (Jan. 30, 2014); *see also White v. Comm'r of Soc. Sec. Admin.*, 970 F. Supp. 2d 733, 753 (N.D. Ohio 2013) ("The fact that the ALJ did not incorporate all of Dr. Castor's restrictions, despite attributing significant weight to his opinion, is not legal error in and of itself.") (Boyko, J.); *Newsome v. Astrue*, No. 11-1141, 2012 WL 2922717 at *6 (S.D. Ill. July 17, 2012) (noting the fact that the ALJ gave great weight to an opinion "does not mean that he was required to adopt it wholesale.")

activities, the ALJ must treat it as 'severe.'" *Id.* (*citing* Social Security Ruling (SSR) 96-3p, 1996 WL 374181 at * 1 (1996)). It is undisputed that the RFC found Plaintiff could never climb ladders, ropes, or scaffolds, and also could never work in an environment with unprotected heights, moving mechanical parts, or drive a vehicle. (Tr. 24). Plaintiff's brief acknowledges that these limitations "would make the work conditions safer in the event of a bout of vertigo," but argues that it does not account for Plaintiff's vertigo-related limitations when they occur. (R. 10, PageID# 563). To the extent Plaintiff is arguing that the ALJ characterization of her vertigo as "severe" at Step Two automatically obligated the ALJ to include correspondingly significant or major limitations when formulating the RFC, such an argument contradicts the above cited Sixth Circuit law. In other words, simply because an impairment is deemed to have "more than a minimal effect" on the claimant's work-related abilities, it does not follow that those effects will necessarily be significant or drastic.

The rule that an RFC and a concomitant hypothetical question "must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the vocational expert, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). "In formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he deems credible." *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582 (6th Cir. 2010); *Stanley v. Sec'y of Health &*

*Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)), *adopted by* 2011 WL 441518 (Feb. 4, 2011).

Here, the ALJ expressly found that "Slivka's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible for the reasons explained in this decision." (Tr. 25). Throughout the decision, the ALJ noted that Plaintiff's objective diagnostic tests for vertigo "were normal" (Tr. 22), the fact that Plaintiff no longer took any medication for her vertigo or dizziness and took medication for only a short time (Tr. 22, 25), and the fact that Plaintiff "receives no treatment for dizziness." (Tr. 25). As stated in the previous section *supra*, the RFC and corresponding hypothetical need only incorporate limitations the ALJ accepted as credible and *not* the unsubstantiated allegations by claimant. To the extent Plaintiff would take issue with the ALJ's decision to deem her testimony not fully credible, she has not presented the court with a legal argument challenging the ALJ's credibility determination, and, therefore, has waived such argument. *See, e.g., Siple-Niehaus v. Comm'r of Soc. Sec.*, No. 5:15cv01167, 2016 WL 2868735 at n. 12 (N.D. Ohio, May 17, 2016) (finding that plaintiff "has not challenged the ALJ's credibility determination" and, therefore, "arguments pertaining to the ALJ's assessment of her credibility have been waived.") (Burke, M.J.); *cf. Williams v. Comm'r of Soc. Sec.*, No. 2:14cv2655, 2016 WL 2733518, at *2 (S.D. Ohio May 10, 2016) (declining to consider Plaintiff's argument challenging the ALJ's credibility determination, because it was not raised before the Magistrate Judge in the statement of errors).

Plaintiff's recitation of those portions of the record that she believes would support greater limitations, as well as statements she made in the record to medical providers, are of no consequence. Such arguments are tantamount to an invitation for this court to reweigh the evidence and to engage in its own credibility analysis. However, this court's role in considering a social security appeal does not include reviewing the evidence *de novo*, reweighing the evidence,

18

or making credibility determinations. *Brainard*, 889 F.2d at 681. Therefore, Plaintiff's second assignment of error is without merit.

### IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

        s/ *David A. Ruiz*
        David A. Ruiz
        United States Magistrate Judge

Date: May 29, 2018

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).